BROWN, C.J.
*1161 Plaintiffs, Steve and Minnie Slaughter, husband and wife, appeal from a judgment sustaining an exception of prescription filed by defendant, Central United Life Insurance Company, dismissing all of Plaintiffs' claims for disability insurance benefits, surrender value, and refunds of premiums paid from the date of disability. For the following reasons, we affirm in part, reverse in part, and remand.
FACTS AND PROCEDURAL HISTORY
In October 1983, Plaintiffs purchased a guaranteed health and accident insurance policy insuring the life and health of Minnie Masters Slaughter against disability from Consolidated American Life Insurance Company. At oral argument, we were told that Mrs. Slaughter was employed by the Slaughters' own business, Steve Motors and Truck Parts, and this policy was part of a group insurance package. Consolidated American Life Insurance Company and the policy were subsequently acquired by Central United Life Insurance Company ("Defendant" or "Central United"), by and through a merger.
Plaintiffs paid all of the premiums due on or in connection with the policy and maintained the policy in full force and effect at all times through February 16, 2016. On that date, Plaintiffs filed their petition, alleging that in February 1994, Mrs. Slaughter became totally disabled as the result of a nervous breakdown and depression and has been totally and continuously disabled at all times since February of l994.
Plaintiffs sought to recover from Defendant the policy's limit of 60 months (five years) of indemnity payments at $940 per month for a total of $56,400, together with legal interest on those monthly payments from the date on which each of those monthly payments became due until paid. The petition did not specify which 60-month period for which Plaintiffs were seeking benefits.
However, in the alternative, Plaintiffs requested "a refund of all premiums paid by petitioners, from February of 1994 through March of 1999, which, under the Policy, were waived during her disability for a period of five (5) years, together with legal interest from the date of payment until the date of refund."
In their argument to the trial court and in their appellate brief, Plaintiffs urged that the written proof of loss sets out that Mrs. Slaughter's claim for continuous disability benefits could potentially be any 60-month period between 1994 and 2015, including the 60-month period immediately prior to January 1, 2015 (i.e., from January 2010 to January 2015).
Filed with the petition are a copy of the insurance policy, a copy of the "Individual Disability Claim Form," a list of treating physicians, a copy of the "Occupational Information" form, a copy of the "Attending Physician's Initial Report" form, and a copy of the "General Power of Attorney."
The physician's report indicates that Mrs. Slaughter's condition developed as a result of a "self-inflicted gunshot wound to the chest in 1994 due to her depression"
*1162 and the physician, Dr. Shane Carr, was first consulted in 1999. It also shows that Mrs. Slaughter had onset dementia in 2014. The doctor wrote, "Her husband is trying to get benefits for disability going back to 1994. My record of her illness is limited." As of a report dated January 20, 2015, Dr. Carr's diagnosis for Mrs. Slaughter was anxiety/depression and migraine headaches. He also wrote that she had been unable to perform any job duties since 1994 and will never return to work.
On the occupational form, Mr. Slaughter, who owned Steve Motors and Truck Parts, reported that his wife was "unable to perform any duties due to lack of mental capacity following nervous breakdown." He wrote that she gave up employment duties from 1994 to the present and that she had been a secretary, a bookkeeper, and an automobile title clerk.
On the claim form, Mr. Slaughter wrote February 1994 as the date of the accident and last work and indicated that "claimant suffered a nervous breakdown due in part to the stress from her employment and other stresses in life." She was hospitalized for depression and a gunshot wound at Christus Schumpert on St. Mary Place in February 1994.
Defendant filed "Peremptory Exceptions of No Cause of Action and Prescription," together with a memorandum in support thereof. Defendant argued that Plaintiffs' claims for disability benefits under the policy were barred by prescription, and there is no cause of action because the disability is not covered under the suicide exclusion provision. Defendant's exceptions were argued to the trial court, and then taken under advisement.[1]
In its judgment after the hearing, the trial court found:
The Plaintiffs' disability in this case arose in February of 1994 and Plaintiffs are claiming benefits for the 60-month period from February of 1994 to March of 1999 according to Plaintiffs' Petition. Although the Plaintiffs attempt to argue that they are seeking benefits for the period of January 2010 to January 2015, this argument is futile since the Petition specifically references 1994 as the start of the alleged disability. Id. The fact that the Plaintiffs' disability continued beyond the sixty (60) month period for which she would be entitled to compensation under the Policy is immaterial.... This Policy has a maximum indemnity period of sixty (60) months and the policy does not provide indemnity payment for the Insured as long as the disability exists. Id. ... Since there were no issues involving Plaintiffs' lack of capacity to bring the claim or provide proof of loss to Defendant, Plaintiffs had one year and ninety days from the time proof of loss was required according to the Policy. Thus, the latest possible date for Plaintiffs to furnish proof of loss was June 29, 2000. However, Plaintiffs did not submit any proof of loss to Defendant until January 22, 2015. This was over twenty (20) years after Plaintiffs' claim arose and almost fifteen (15) years after the latest possible date to furnish proof of loss. Further, the Legal Action provision of the Policy provides that no action may be brought under indemnity Policy after ten (10) years after proof of loss was required. Thus, the latest possible date for Plaintiffs to file suit was June 29, 2010. Since Plaintiffs did not file suit until February 16, 2016, their claim is untimely and has prescribed based upon the face of the pleadings.
*1163 DISCUSSION
In the instant matter, Mrs. Slaughter's disability is a nervous breakdown and depression which rendered her "unable to perform any duties." Although Mrs. Slaughter's total disability began in February 1994, it has continued unabated to and through February 2016. The premiums have been consistently paid by Plaintiffs from 1994 until 2015. Plaintiffs claim that they are not limited to asserting disability claims due under the policy to the first 60 months after the disability arose. Rather, they argue that they are entitled to receive the disability benefits under the policy for each and every month during which Mrs. Slaughter has been disabled and the policy has been in full force and effect.
This Court in Jefferson v. Monumental General Ins. Co. , 577 So.2d 1184, 1187 (La. App. 2d Cir. 1991) (citations therein omitted) noted:
An insurance policy is a contract between the parties and the rules, established for the construction of written agreements, also apply to contracts of insurance. The intention of the parties is of paramount importance in interpreting insurance contracts. Their intention is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance contract should not be given an interpretation which would act to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion ... (Citations therein omitted).
The provisions regarding benefit payments and limit of the number of months of payments provide, in relevant part, as follows:
POLICY SCHEDULE ... MAXIMUM INDEMNITY PERIOD FOR SICKNESS 60 MONTHS ...
Part I-Monthly Indemnity-Sickness.
If, as a result of such sickness, the Insured suffers continuous total disability and is regularly attended by a physician, the Company will pay periodically during such continuous disability, Elimination Period for-Sickness; at the rate of the Monthly Indemnity, Total Disability, specified in the Policy Schedule. Indemnity shall be payable for up to the Maximum Indemnity. Period for Sickness specified in the Policy Schedule...
The notice of claim provision in the policy provides in relevant part:
NOTICE OF CLAIM. Written notice of claim must be given to the Company within thirty days after the occurrence or commencement of any loss covered by this policy , or as soon thereafter as is reasonably possible.... (Emphasis added).
The proofs of loss provision under the policy provides, in whole, as follows:
PROOFS OF LOSS. Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required. (Emphasis added.)
*1164 The legal action provision reads as follows:
LEGAL ACTION. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of ten years after the time written proof of loss is required to be furnished.
Prescription Of Disability Claim
On appeal, Plaintiffs contend that the trial court erred in sustaining Defendant's exception of prescription and dismissing all of their claims. According to Plaintiffs, the issue of prescription involves contractual defenses and should be tried on the merits. Also, the trial court erred in interpreting and applying the law and facts of this case.
The court may not supply the objection of prescription, which shall be specially pleaded. La. C.C.P. art. 927(B). An objection of prescription may be raised through the peremptory exception at any stage of the proceeding prior to a submission of the case for a decision. La. C.C.P. arts. 927(A)(1), 928(B). The rules of prescription are designed to prevent old and stale claims from being prosecuted. Wells v. Zadeck , 11-1232 (La. 3/30/12), 89 So.3d 1145 ; Campo v. Correa , 01-2707 (La. 6/21/02), 828 So.2d 502. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed. Campo , 828 So.2d at 508 ; Williams v. Sewerage & Water Bd. of New Orleans , 611 So.2d 1383, 1386 (La. 1993). In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations contained therein are accepted as true. Wells , 89 So.3d at 1149-50.
Plaintiffs' argument that Mrs. Slaughter's disability is continuing does not alter the analysis. The contention that Plaintiffs can furnish proof of loss and claim benefits at any 60-month period from 1994 to 2015 would continue the claim indefinitely, regardless of their inaction. They have not shown that they did anything to pursue the claim or notify Defendant that they believed they had a continuing claim until the present. Because 22 years passed without any action from Plaintiffs, their claims have prescribed.
In the instant matter, based on the face of the pleadings, specifically Plaintiffs' petition, Mrs. Slaughter became totally disabled as the result of a nervous breakdown and depression and has been totally and continuously disabled at all times since February of l994. Thus, the trial court correctly ruled that the date of disability is February 1994, and the latest possible date for Plaintiffs to furnish proof of loss was June 29, 2000. Plaintiffs did not submit any proof of loss to Defendant until January 22, 2015, over 20 years after Plaintiffs' disability arose and almost 15 years after the latest possible date to furnish proof of loss. The Legal Action provision of the policy provides that no action may be brought under the policy after ten years and the latest possible date for Plaintiffs to have filed suit was June 29, 2010. The trial court correctly ruled that "[S]ince plaintiffs did not file suit until February 16, 2016, the claim is untimely and has prescribed based upon the face of the pleadings."
Other Relief Sought
In addition to disability benefits, in their petition, Plaintiffs sought a refund of all premiums paid by them "from and after ... the date of Petitioner Minnie Masters Slaughter's disability, which, under the *1165 Policy, were waived during her disability for a period of five (5) years, together with legal interest from the date on which each installment became due until paid ...". Plaintiffs also requested payment of the surrender value or benefits payable under the policy.
Rather than dismissing these claims outright without allowing the parties to further develop whether Plaintiffs are even entitled to recover such sums, we will reverse that part of the trial court's judgment and remand this matter so that Plaintiffs and Defendant can present their respective arguments on the viability of these claims to the trial court.
CONCLUSION
For the reasons set forth above, we affirm that part of the trial court's judgment granting the exception of prescription filed by Defendant as to Plaintiffs' claim for disability benefits. However, we reverse that part of the trial court's judgment dismissing Plaintiffs' remaining claims and remand the matter to the trial court for further proceedings regarding Plaintiffs' request in their petition for a refund of premiums paid and surrender value as per the policy rider. Specifically, the parties are to be given the opportunity to address whether Plaintiffs have a viable cause of action to recover these sums under Louisiana law. Costs of this appeal are assigned to Defendant.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

The transcript from the October 2016 hearing shows that Defendant's counsel focused mostly on the issue of prescription, did not withdraw the exception of no cause of action, and did not argue extensively about the disability claim being excluded from coverage.